UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

REBECCA BELLUE                                         CIVIL ACTION

VERSUS

EAST BATON ROUGE SHERIFF, SID        NO.: 3:17-CV-00576-BAJ-RLB
GAUTREAUX IN HIS OFFICIAL
CAPACITY AS SHERIFF, AND CAPTAIN
ELEANOR T. STEWART

## RULING AND ORDER

Before the Court is Defendants' **Motion for Summary Judgment (Doc. 24)**. Plaintiff filed an **Opposition to Motion for Summary Judgment (Doc. 33)**. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331. Oral argument is unnecessary. For the reasons stated below, Defendants' motion is **GRANTED**.

I.     FACTUAL BACKGROUND

Rebecca Bellue ("Plaintiff") claims that she suffered sexual harassment and discrimination by her supervisor, Lieutenant Tommy Cole ("Cole") and racial discrimination by her supervisor, Captain Elanor T. Stewart ("Stewart") while employed at the East Baton Rouge Sheriff's Office ("EBRSO") (Doc. 1-1 at ¶ 6). Plaintiff further asserts that she was retaliated against by EBRSO when she reported such harassment and discrimination to the Internal Affairs Department, and that she was punished by being removed from her position and eventually fired by EBRSO. (*Id.* at ¶ 7). Defendants in this matter once included Mayor Sharon Weston Broome, Sheriff Sid Gautreaux, and Captain Elanor T. Stewart. Mayor Sharon Weston Broome was terminated as a defendant on August 4, 2017 via Plaintiff's First

1

Supplemental Petition for Damages (Doc. 1 at ¶ 5). Stewart was dismissed from this matter on September 13, 2018 by this Court's Order granting in part and denying in part Defendants' motion to dismiss (Doc. 23). Plaintiff now brings a claim against the remaining Defendant, Sheriff Sid Gautreaux ("Defendant"), claiming that as he was the person who ultimately signs off on terminations from EBRSO, he is responsible for Plaintiff's termination.[1]

Concerning Plaintiff's Title VII claims, Plaintiff alleges that the harassment and discrimination began upon her return to work from a protracted absence due to an injury. (*Id.* at ¶ 10). Plaintiff claims that she spoke to Human Resources personnel about changing her job duties due to certain issues surrounding care for her elderly mother and small children. (*Id.* at ¶ 11). On or about March 4, 2015, Plaintiff was reassigned to the "Communications" department, with Stewart as her new supervisor. (*Id.* at ¶ 12). Plaintiff claims that all four other individuals working in her department were African Americans.[2] (*Id.* at ¶ 13). Plaintiff further asserts that all of her African American co-workers received an eight-week training program for the position, but she did not. (*Id.* at ¶¶ 14-15).

---

[1] Plaintiff also appears to request that the Court allow her to amend her petition due to new information gained through discovery. (Doc. 33 at n.1). Plaintiff's right to amend has been terminated by virtue of this Court having granted a motion to dismiss part of Plaintiff's petition, pursuant to Federal Rule of Civil Procedure 15(a). Further, Plaintiff has not submitted a copy of her proposed pleading to the Court, also a requirement under Rule 15(a). To the extent that Plaintiff now requests leave of Court to amend her petition, such request is denied.

[2] Plaintiff is a white female.

Plaintiff also avers that she was put on Cole's shift, and received uncomfortably flirtatious communications from him regularly. (*Id.* at ¶¶ 16-17). Plaintiff alleges the following conduct:

1) On March 19, 2015, Cole sent her a text message reminding her that Friday was "free dress day" which included a winking smiley face. (*Id.* at ¶ 18).

2) On March 20, 2015, Cole told her that she looked nice and spoke to her for an extended period of time. (*Id.* at ¶ 19).

3) On April 2, 2015 Cole sent another text message reminding her that Friday was "free dress" day which again included a winking smiley face. (*Id.* at ¶ 20).

4) On April 21, 2015, in response to a message sent by Plaintiff wherein Plaintiff requested that Cole call her back and Plaintiff apologized from bothering him, Cole responded "Oh, you could never be a bother," and included a smiley face. (*Id.* at ¶¶ 21-22).

5) On May 17, 2015, Cole sent Plaintiff a text message offering to submit a timesheet for her and included a smiley face. (*Id.* at ¶ 24).

6) On July 13, 2015, while with Plaintiff, Cole failed to end a conversation among several other men, the topic of which Plaintiff found to be sexually offensive towards women. (*Id.* at ¶ 31)

Plaintiff also avers that on several occasions in August 2015, Plaintiff confided in Lieutenant Candace Brown ("Brown") and Stewart that she believed Cole was waiting around the office for Plaintiff to arrive to or depart from work, and that she felt as though she was being stalked. (*Id.* at ¶ 33-34).

Plaintiff asserts that she received an unreasonably negative performance review from Cole, during which Cole became manic and began waving his arms around in frustration at Plaintiff's lack of a response to the negative evaluation. (*Id.*

at ¶ 25). Plaintiff further asserts that she received a positive evaluation from Pam Moran which she claims is at odds with the evaluation received from Cole. (*Id.* at ¶ 26). Plaintiff approached Stewart with the discrepancies between the two reports, at which point Stewart allegedly told her that she was being paranoid and overreacting. (*Id.* at ¶¶ 29-30).

On September 16, 2015, Plaintiff met with Rhys Flynn of the EBRSO Internal Affairs Department to report Cole's behavior. (*Id.* at ¶ 35). On September 21, 2015, Plaintiff alleges that she revived a call from Stewart, informing her that Colonel Lawrence McLeary wanted to meet with her on September 22, 2015. (*Id.* at ¶ 36). Plaintiff was fired from EBRSO on September 22, 2015. (*Id.* at ¶ 37).

Defendants paint a different picture of the series of events that transpired between March and September of 2015. Defendants claim that Plaintiff was transferred to the Communications Department on March 4, 2015, and complained to Stewart about the transfer the next day on March 5, 2015. (Doc. 24-1 at p. 3). Defendants further alleged that Plaintiff threatened to file a lawsuit against Stewart over the transfer. (*Id.*). Defendants assert that Plaintiff was assigned to the training sector of the Communications Department for March 5, 2015, but never reported to work. (*Id.* at p. 4). Defendants claim that on March 6, 2015, Stewart requested that Plaintiff's assignment to the Communications Department be rescinded, as Plaintiff made it clear that she did not want to be part of the Communications team. (*Id.*). Stewart's request was denied. (*Id.*).

Defendants further aver that due to Plaintiff's many years of experience working in EBRSO, that she was slated to receive approximately eight weeks of call taking assimilation and dispatch training. (*Id.*). Defendants contend that Plaintiff performed poorly during this training, and remedial classes were recommended by Cole. (*Id.*). Defendants allege that Plaintiff also received one-on-one training with Sergeant Pam Moran beginning in April 2015, which was completed in June. (*Id.*). On June 28, 2015, Plaintiff received her evaluation from Cole. (*Id.* at p. 5). The evaluation praised Plaintiff's years of service, but offered pointed criticism of her attitude and effect on team morale.[3]

Plaintiff complained to Stewart about Cole's report on July 16, 2015, claiming that she was being picked on and harassed by Cole. (*Id.*). Defendants aver that Stewart informed Plaintiff that she did not believe she was being picked on, but that she was nonetheless obligated to make a harassment complaint to the Internal Affairs division. (*Id.*). Due to the allegations made against Cole, Stewart changed Plaintiff's shift effective July 20, 2015, and Plaintiff was assigned a new supervisor, Brown. (*Id.* at p. 6). Defendants assert that Stewart emailed Brown and informed her that Plaintiff would be required to attend additional training between August 31, 2015 through September 4, 2015 and attend the Association of Public-Safety Communications Officials training ("APCO") for further training. (*Id.*). Defendants

---

[3] Plaintiff was described as being "pessimistic when vocalizing her opinions on Office matters," and that Plaintiff "tends to become outdone very quickly when speaking to Complainants on the telephone, often raising her voice and being short with them." Plaintiff is further described as being insubordinate, and that she "has displayed tendencies to be argumentative when speaking with/receiving direction from supervisors . . ." (Doc. 24-1, Exhibit E).

5

claim that Plaintiff refused to attend the training, and that another deputy was sent in her place. (*Id.*). Defendants further allege that Plaintiff made several employment related mistakes in August and September 2015. (*Id.*).

On September 11, 2015, Stewart drafted a letter to Major Anthony Ponton ("Ponton") setting forth all reasons she believed Plaintiff should be removed from the Communications Department via transfer or termination based on Plaintiff's poor work performance, creation of a hostile work environment, public intimidation, threats of litigation, and unwillingness to take orders or re-direction from supervisors or superiors. (*Id.*). Plaintiff was eventually terminated for violating Section 01-01.06 of EBRSO's Procedural Order for "Conduct Unbecoming" and Section 01-01.14 for "Unsatisfactory Performance."

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the nonmovant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). At that moment,

the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

Adversely, the nonmovant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. ARGUMENTS

Defendants argue that Plaintiff has not established by preponderance of the evidence that she engaged in a protected activity, an adverse employment action occurred, or that a causal link existed between the protected activity and the adverse action, as required under *Drake v. Nicholson*, 324 F. App'x 328, 331 (5th Cir. 2009). (Doc. 24-1 at pp. 9-10). Specifically, Defendants argue that Plaintiff cannot establish that there was a causal link between the adverse action and the protected activity. (*Id.* at p. 12). Defendants claim that Plaintiff was terminated because she violated two of EBRSO's Procedural Orders, and that despite additional training, Plaintiff's

performance at her job remained subpar. (*Id.*) Plaintiffs assert that they have successfully provided a legitimate, non-retaliatory reason for Plaintiff's termination.

Plaintiff argues that because she was terminated mere days after reporting the alleged sexual harassment incident to Internal Affairs, that such termination gives rise to a reasonable inference that Plaintiff's termination stems from, and was in retaliation for, the report. (Doc. 33 at p. 2). Over the course of several pages, Plaintiff address multiple facts allegedly in dispute in an effort to stave off summary judgment. Plaintiff further asserts that the allegation that she performed unsatisfactorily at her position is incorrect. (*Id.* at p. 8). Specifically, Plaintiff avers Pam Moran stated that "overall, Dy. Bellue has shown great improvement from her first day on the radio. Dy. Bellue is increasing her typing speed and her confidence every day on the radio. I feel at this time Dy. Bellue is able to work the radio on her own." (*Id.*). This conversation allegedly took place on June 12, 2015. (*Id.*). Plaintiff alleges that Defendants cannot establish Plaintiff's poor job performance, as documents in Plaintiff's file show her completion of training and willingness to learn.

## IV. ANALYSIS AND DISCUSSION

To establish the *prima facie* case for unlawful retaliation under Title VII, a plaintiff must establish 1) that she engaged in an activity protected by Title VII, 2) that an adverse employment action occurred, and 3) that a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). An employer commits an unlawful act when it subjects an employee to discriminatory practices "because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing..." 42 U.S.C.A. § 2000e-3. Once a plaintiff makes an allegation of a violation of Title VII, a defendant must offer a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), *holding modified on other grounds by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 (1993). Once such a reason is proffered, the burden shifts back to the plaintiff to make a showing that the reason offered by the defendant is a mere pretense to the discriminatory intent. *Id* at 804.

The Court finds that Defendants have successfully met their burden to offer a legitimate, non-discriminatory reason for firing Plaintiff. Defendants have provided a veritable smorgasbord of documentary evidence that establishes Plaintiff's inability or unwillingness to properly execute her job duties. Through sworn deposition testimony, Defendants claim that Plaintiff: 1) did not appear at her training shift as required, (Doc. 24-6 at p. 21), 2) made multiple work-related mistakes (*Id.* at p. 36)(Doc. 24-13), 3) engaged in unprofessional conduct towards another deputy after that deputy stopped Plaintiff for speeding (Doc. 24-14), 4) created a tense and hostile work environment for her coworkers via her behavior and attitude by failing to accept, and becoming hostile toward, criticism (Doc. 24-15 at pp. 1-4)(Doc. 25-17 at pp. 1-2), and 5) once failed to sound an alert tone when dispatching a high priority call, as was required.[4] There are further allegations that, despite months of regular

---

[4] The Court notes that this is a mere sampling of potential reasons for Plaintiff to have been fired, as described by the deposition testimony and documents attached to Defendants' motion for summary judgment.

training and remedial training, Plaintiff was not executing her job duties satisfactorily. (Doc. 24-18).

Pursuant to *McDonnell Douglas*, Plaintiff has the burden to establish that the reasons cited for her firing were a mere pretense to hide a retaliatory purpose. Plaintiff has failed to carry that burden. Plaintiff has ostensibly identified multiple issues of fact that are in dispute, only one of which the Court deems "material" for the purposes of this summary judgement motion. Of the facts Plaintiff claims are still in dispute, only one is germane to Plaintiff's burden to establish that here firing was a pretense for retaliation. Plaintiff alleges that she received a positive work review from another supervisor, which was at odds with the one she received from Cole. This alone, however, is woefully insufficient to establish that Plaintiff's firing was a pretense for retaliation. Plaintiff may have improved her job performance to a level that one of her supervisors found acceptable, but Plaintiff does not address the myriad of other documented legitimate complaints concerning her general demeanor, attitude towards her superiors, and unwillingness to accept constructive criticism that formed the basis of at least one of the stated reasons for her firing. Furthermore, completion of training programs and general improvement from a previous baseline do not, on their own, indicate that Plaintiff continually executed her job duties in a competent manner. In fact, Defendants note numerous occasions where Plaintiff did *not* execute her job duties appropriately, despite the weeks of regular, remedial, and one-on-one training conducted with Plaintiff for Plaintiff's benefit.

Therefore, even when viewed in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not alleged facts that adequately rebut Defendants' legitimate reasons for firing her. The Court finds that Plaintiff has failed to satisfy her burden as set forth in *McDonnell Douglas*. Summary judgment is **GRANTED**.

V. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendants' **Motion for Summary Judgement (Doc. 24)** is **GRANTED**.

Baton Rouge, Louisiana, this 8th day of April, 2019.

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**